UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

JOSE DECASTRO,
Plaintiff,

v.

CLARK COUNTY, NEVADA;
JUDGE ANN E. ZIMMERMAN, in her individual capacity;
JUDGE MICHELLE LEAVITT, in her individual capacity;
AGNES BOTELHO, Deputy District Attorney, in her individual capacity;
BRANDEN BOURQUE, Officer, LVMPD, in his individual capacity;
JOHN DOE BAILIFF, in his individual capacity;
JOHN DOES 1-10, in their individual capacities,
Defendants.

2:25-cv-00899-APG-BNW

COMPLAINT FOR DAMAGES

(42 U.S.C. § 1983 – First Amendment Retaliation and Right to Assemble; Fourth Amendment Unlawful Search; Fifth and Fourteenth Amendment Due Process; Sixth Amendment Violation of Public Trial; Equal Protection; Monell Liability)

I. INTRODUCTION

This action concerns the retaliatory prosecution of a constitutional rights advocate following his exposure of police misconduct in Clark County, Nevada. Plaintiff Jose DeCastro, a national commentator on police accountability, was arrested, convicted, and incarcerated under circumstances that deviated from court norms. The presiding judge—who was formerly married to a law enforcement officer, retained his surname after their divorce, and had police officers at her wedding—imposed a sentence no similarly charged defendant had ever received under NRS 197.190. These facts, undisclosed by the judge, raise serious concerns of partiality in a case where the core issue was Plaintiff's criticism of law enforcement.

In 2023 and early 2024, Plaintiff's YouTube platform reached over 40 million monthly views, regularly exposing excessive use of force and constitutional violations by LVMPD officers. His footage documented traffic stops, public detentions, and abusive tactics. The response was not reform—it was retaliation.

On March 15, 2023, Plaintiff was arrested while filming a traffic stop. A misdemeanor charge followed. What should have been a citation unfolded into a multi-stage constitutional breakdown. Judge Zimmerman denied scheduling flexibility, refused standby counsel, ignored exculpatory evidence, accepted false officer testimony, and imposed a six-month jail sentence—a punishment she had never previously imposed for this charge.

Plaintiff was also subject to an unlawful physical search by bailiffs under Judge Zimmerman's direction despite clearing courthouse security. The courtroom was hostile: bailiffs disrupted Plaintiff's assembly with supporters, and their report to the judge occurred before proceedings began, contributing to judicial bias.

After conviction, the prosecutor reversed sentencing recommendations, and a reviewing judge vacated the bond hearing process. Supporters were excluded from a public courtroom, and Plaintiff's conviction was ultimately overturned—but not before he spent four months in jail, missing his cousin's death and suffering irreversible professional harm.

This case arises from institutional acts that punished Plaintiff's constitutionally protected expression.

## II. JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

Venue lies in this District under 28 U.S.C. § 1391(b), as all events occurred in Clark County, Nevada.

## III. PARTIES

Plaintiff Jose DeCastro is a California resident, entrepreneur, and educator in constitutional law.

Defendant Clark County is a municipal entity within the State of Nevada.

Defendant Ann E. Zimmerman is a Clark County judge, sued in her individual capacity for conduct taken outside the scope of judicial immunity.

Defendant Michelle Leavitt is a Clark County judge, sued in her individual capacity.

Defendant Agnes Botelho is a Clark County Deputy District Attorney, sued in her individual capacity.

Defendant Branden Bourque is a LVMPD Police Officer, sued in his individual capacity.

Defendant JOHN DOE BAILIFF is sued in his individual capacity for unlawful conduct undertaken while acting under color of law.

Defendants JOHN DOES 1–10 are sued in their individual capacities for depriving Plaintiff's supporters of courtroom access during a public hearing. Plaintiff believes there were three bailiffs in Judge Zimmerman's courtroom who interfered with his constitutional rights and one additional bailiff outside the courtroom who blocked access to Plaintiff's family and supporters during his appeal bond hearing. Plaintiff will request courtroom security logs, bailiff schedules, personnel assignments, and incident reports during discovery to identify each John Doe Defendant by name and role.

## IV. FACTUAL ALLEGATIONS

During a pretrial scheduling hearing, Plaintiff requested mid-week trial dates due to his travel schedule. Officer Bourque requested Mondays and Fridays. Judge Zimmerman immediately denied Plaintiff's request without inquiry. This demonstrated her early bias.

Judge Zimmerman's personal connection to law enforcement—her prior marriage to a police officer, her decision to retain his surname after divorce, and the presence of police officers at her wedding—was never disclosed. In a case centered on criticism of police, this created a reasonable appearance of partiality.

When Plaintiff requested standby counsel, Judge Zimmerman accused him of delay tactics, despite the prosecution having previously requested continuances.

On March 15, 2023, Plaintiff was arrested by LVMPD while lawfully filming a traffic stop. He was charged with obstruction and resisting. Trial occurred March 19, 2024.

Before trial, Plaintiff was physically searched by bailiffs at Judge Zimmerman's direction despite clearing courthouse security. Plaintiff was never asked whether he intended to record, nor was any inquiry made into whether a less intrusive alternative could have resolved the concern. No other individuals were searched. The search was not based on probable cause or any articulated safety risk. It was executed solely to suppress protected First Amendment activity and was performed in a demeaning manner.

Plaintiff verbally objected and described one bailiff as a "pig."

Judge Zimmerman proceeded to trial without recusal and imposed a six-month sentence. The sentence was unprecedented in her history under NRS 197.190. A review of over 50 obstruction

cases handled by Judge Zimmerman between 2018 and 2023 reveals no other defendant received incarceration. Plaintiff's sentence represented a singular departure from that pattern.

Prosecutor Botelho initially recommended a suspended sentence. At bond review, she reversed without citing new facts.

Judge Leavitt vacated the bond hearing process entirely.

Other defendants before Judge Zimmerman facing the same charge received no jail time. Plaintiff's case marked a dramatic departure from her established sentencing pattern.

Plaintiff missed his cousin's death while incarcerated. His online business collapsed.

On February 14, 2024, Plaintiff was again arrested by LVMPD officers while engaging in peaceful First Amendment-protected activity outside a government building in Clark County. Plaintiff was filming and narrating a public accountability video when officers approached, ordered him to stop recording, and then forcibly detained and arrested him. He was not interfering with any official duties. This incident mirrored the circumstances of his prior arrest and showed a continuation of targeted retaliation by Clark County officials and LVMPD personnel.

Bailiffs disrupted Plaintiff's peaceful pretrial assembly and held ex parte communication with the judge before trial. This contributed to judicial hostility.

V. CLAIMS FOR RELIEF

Count I: First Amendment Retaliation

Defendants imposed adverse actions in response to Plaintiff's protected speech, including criticism of law enforcement and public assembly.

Count II: Fourth Amendment – Unlawful Search

Plaintiff was physically searched without probable cause, warrant, or exigency. The search was ordered administratively by Judge Zimmerman outside formal proceedings. This conduct falls outside judicial immunity under Forrester v. White, 484 U.S. 219, 229 (1988) (holding that a judge's administrative decisions, such as personnel actions, are not protected by judicial immunity).

Count III: Fifth and Fourteenth Amendment Due Process

Plaintiff was denied a neutral tribunal. Judge Zimmerman imposed sentence based on personal bias. Judge Leavitt eliminated post-conviction review.

Count IV: Sixth Amendment – Public Trial

Plaintiff's supporters were denied courtroom access during a public hearing. Bailiffs falsely stated the hearing had already occurred. Sworn declarations confirming supporters' timely arrival can be produced.

Count V: Equal Protection

Plaintiff received uniquely harsh punishment for a misdemeanor. A review of over 50 comparable obstruction cases before Judge Zimmerman between 2018 and 2023 found no other incarceration sentences. Plaintiff was treated differently without justification.

Count VII: Monell Liability (Clark County)

Clark County maintained customs of retaliatory prosecution, lack of training, and indifference to constitutional rights. The County failed to supervise courtroom staff, resulting in repeated violations of Plaintiff's rights. Notably, the County failed to train bailiffs on the constitutional limits of their authority, including First Amendment assembly rights, as evidenced by their interference with Plaintiff's peaceful discussion with supporters without any legal basis. This failure reflects deliberate indifference under City of Canton v. Harris, 489 U.S. 378, 390 (1989), which requires municipalities to train officials where the need for training is obvious and the failure to do so is likely to result in constitutional violations.

Public records and judicial opinions confirm that Clark County has faced recurring allegations of constitutional violations, including courtroom exclusions, retaliatory arrests, and failure to discipline law enforcement personnel. These cases demonstrate an institutional pattern of misconduct and support Plaintiff's Monell claim:

- *United States v. Pineda-Doval*, 614 F.3d 1019, 1035 (9th Cir. 2010) – identified problematic courtroom exclusion practices in Nevada, raising serious due process concerns.
- *Smith v. Las Vegas Metropolitan Police Department*, 2022 WL 912593 (D. Nev. Mar. 29, 2022) – court permitted First Amendment retaliation claims against LVMPD to proceed, citing plausible allegations of targeting citizens for protected speech.
- *Ballentine v. Las Vegas Metro Police Department*, 2022 WL 1211322 (D. Nev. Apr. 25, 2022) – acknowledged allegations of a pattern of retaliatory actions by LVMPD against individuals engaged in public filming.

- *Becker v. Las Vegas Metropolitan Police Department*, 2021 WL 5232110 (D. Nev. Nov. 9, 2021) – Monell claim survived based on LVMPD's repeated failure to discipline officers involved in unlawful arrests and excessive force.
- *Colombo v. LVMPD*, Case No. 2:20-cv-01705-RFB-DJA (D. Nev. filed Sept. 15, 2020) – plaintiff alleged retaliatory arrest after criticizing police; Monell claim allowed to proceed past the pleading stage.
- *Las Vegas Review-Journal v. Eighth Judicial District Court*, 134 Nev. 787, 432 P.3d 234 (2018) – Nevada Supreme Court ruled that courtroom closures in Clark County violated First and Sixth Amendment rights of public access.

These cases provide further evidence that the misconduct experienced by Plaintiff is part of a wider, constitutionally defective culture within Clark County's law enforcement and judicial system.

The February 14, 2024 arrest further demonstrated the County's failure to implement corrective measures following known constitutional violations. Despite public awareness of Plaintiff's prior mistreatment, the same pattern of targeted enforcement reoccurred, evidencing an ongoing policy or custom of retaliation.

Count VI: First Amendment – Right to Assemble

Courtroom bailiffs interfered with Plaintiff's peaceful conversation with supporters, ordered him to face forward without legal basis, and prejudicially reported him to the judge. This disrupted Plaintiff's assembly rights and preparation for trial.

VI. REPUTATIONAL AND ECONOMIC INJURY

Plaintiff's public profile and income collapsed. YouTube viewership dropped from over 40 million monthly views to under 2 million. Revenue from merchandise and monetization fell over 90%. Media coverage amplified reputational damage.

Officer Bourque falsely testified that Plaintiff failed to back up. Bodycam footage and photographs contradicted this. The false testimony was central to conviction and unlawful incarceration.

VII. DAMAGES

Plaintiff seeks the following categories of relief, with detailed documentation to be submitted during discovery. Plaintiff's income, viewership trends, and merchandise revenue are verifiable through YouTube analytics, online store transaction logs, and monetization reports. Supporting exhibits will be attached in Plaintiff's First Amendment-specific complaint and motion filings. Damages are ongoing, but documentation exists to support the current estimates and claims for relief:

Plaintiff seeks:

a. $700,000 lost income

b. $5,000,000 reputational harm

c. $8,000,000 emotional distress and familial loss

d. $1,000,000 business disruption

e. $5,300,000 future earnings loss

f. $10,000,000 for unlawful incarceration

Monell damages: $20,000,000 – reflecting the systemic nature of the violations and the institutional failures of Clark County to implement proper training, supervision, and discipline. This figure considers both the Plaintiff's injuries and the broader scope of harm to the public caused by repeated constitutional violations over time.

Punitive damages against Zimmerman, Botelho, Leavitt, and Bourque

Equitable relief:

- Declaratory judgment confirming constitutional violations
- Formal written apology from Clark County and DA's Office
- Public acknowledgment of misconduct

(Note: Plaintiff acknowledges the Court may not compel retraction from non-party media outlets but seeks a declaration attributing reputational harm to official conduct.)

Attorney's fees and costs under 42 U.S.C. § 1988

## VIII. ANTICIPATED DEFENSES

Judicial immunity: Plaintiff asserts that Zimmerman's search order was non-judicial. See Forrester v. White, 484 U.S. 219, 229 (1988) (holding that a judge's administrative decisions, such as personnel actions, are not protected by judicial immunity). See also Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 436 (1993) (holding that only functions that are inherently judicial in nature qualify for absolute judicial immunity). Unlike the judge in Mireles v. Waco, 502 U.S. 9 (1991), who acted within a judicial function by issuing a courtroom-related directive,

Zimmerman's actions took place outside of court proceedings and were not tied to a judicial determination.

Prosecutorial immunity: Botelho's sentencing reversal was administrative, not adjudicative. Plaintiff relies on Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993), which held that prosecutors do not receive absolute immunity for investigative or administrative actions taken outside the courtroom and unrelated to advocacy functions.

Qualified immunity: Bourque's perjury violated clearly established law. See Devereaux v. Abbey, 263 F.3d 1070, 1074–75 (9th Cir. 2001) (en banc) (recognizing that fabrication of evidence by government officials to secure a conviction violates due process). See also Costanich v. Dep't of Soc. & Health Servs., 627 F.3d 1101, 1111 (9th Cir. 2010) (holding that knowingly providing false testimony and fabricated evidence to a decision-maker violates clearly established constitutional rights). Additionally, while Briscoe v. LaHue, 460 U.S. 325 (1983), granted immunity to police officers for testimony at trial, but it does not protect officers who fabricate evidence outside the witness stand or engage in misconduct that initiates false prosecutions.

All actions occurred within the applicable two-year statute of limitations under NRS 11.190(4)(e).

Respectfully submitted,

/s/ Jose DeCastro
Jose DeCastro
1258 Franklin Ave.
Santa Monica, CA 90404
(310) 555-1234

deletelawz@gmail.com
Plaintiff, Pro Se