FIRST AMENDED COMPLAINT FOR DAMAGES

(42 U.S.C. § 1983 -- Constitutional Violations)

UNITED STATES DISTRICT COURT DISTRICT OF NEVADA

```
JOSE DECASTRO,                  )
                                )
      Plaintiff,                )
                                )
Case No. 2:25-CV-00899          )
v.                              )
                                )
```

FILED / ENTERED / RECEIVED / SERVED ON COUNSEL/PARTIES OF RECORD

JUN 27 2025

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

CLARK COUNTY, NEVADA; JUDGE ) ANN E. ZIMMERMAN, in her individual ) capacity; JUDGE MICHELLE LEAVITT, ) in her individual capacity; AGNES ) BOTELHO, Deputy District Attorney, ) in her individual capacity; BRANDEN ) BOURQUE, Officer, LVMPD, in his ) individual capacity; JOHN DOE ) BAILIFF, in his individual capacity; ) JOHN DOES 1-10, in their individual ) capacities, ) ) Defendants. ) _____ )

I. NATURE OF THE ACTION

1. This civil rights action arises under 42 U.S.C. § 1983 and seeks redress for systematic violations of the First Amendment (retaliation for protected speech), Fourth Amendment (unlawful search), Fifth and Fourteenth Amendments (denial of due process and equal protection), and Sixth Amendment (denial of public trial) committed by Clark County officials against Plaintiff Jose DeCastro in retaliation for his constitutionally protected criticism of law enforcement.

2. The constitutional violations alleged herein are not merely accusations—they have been substantiated by federal court findings. On September 12, 2024, United States District Judge Andrew P. Gordon found that LVMPD Officer Branden Bourque committed material perjury against Plaintiff and engaged in First Amendment retaliation, excessive force, and denial of due process. See Exhibit 1, Order of Judge Gordon, *DeCastro v. Las*

*Vegas Metropolitan Police Department*, Case No. 2:23-cv-00580-APG-EJY (D. Nev. Sept. 12, 2024).

3. Newly discovered evidence demonstrates that Clark County maintained an institutional policy and custom of constitutional violations against First Amendment auditors, despite official training warning against such conduct. The Las Vegas Police Protective Association (LVPPA) issued training videos in 2018 and 2024 explicitly warning officers against arresting citizens engaged in protected filming activities, yet Defendants systematically violated these known constitutional requirements.

4. Following Bourque's perjured testimony and Plaintiff's wrongful conviction, Clark County officials engaged in coordinated constitutional violations to further punish Plaintiff for his police accountability advocacy, including unlawful searches, denial of public trial, arbitrary denial of due process, prosecutorial vindictiveness, and unprecedented retaliatory sentencing.

5. This case demonstrates how different branches of government—law enforcement, prosecution, and judiciary—coordinated to systematically violate constitutional rights when faced with effective criticism of their conduct, despite institutional knowledge of legal requirements.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).

7. Venue is proper under 28 U.S.C. § 1391(b) because all events occurred in Clark County, Nevada.

8. This action is brought under 42 U.S.C. § 1983 to redress deprivation of constitutional rights under color of state law.

III. PARTIES

9. Plaintiff Jose DeCastro is a California resident and constitutional rights advocate whose YouTube platform documenting police misconduct reached over 40 million monthly views with more than 655,000 subscribers.

10. Defendant Clark County is a Nevada municipal entity responsible for the policies, customs, and training of its judicial and law enforcement personnel.

11. Defendant Ann E. Zimmerman is a Clark County District Court judge sued in her individual capacity for conduct outside the scope of judicial immunity.

12. Defendant Michelle Leavitt is a Clark County District Court judge sued in her individual capacity for arbitrarily denying due process.

13. Defendant Agnes Botelho is a Clark County Deputy District Attorney sued in her individual capacity for participating in coordinated retaliation and prosecutorial vindictiveness.

14. Defendant Branden Bourque is an LVMPD Officer whose material perjury has been judicially recognized by federal court. He is sued in his individual capacity.

15. Defendant JOHN DOE BAILIFF is sued in his individual capacity for conducting unlawful searches.

16. Defendants JOHN DOES 1-10 are sued in their individual capacities for denying access to public proceedings.

IV. FACTUAL ALLEGATIONS

A. Plaintiff's Protected Speech Activities

17. Plaintiff operated one of the nation's most prominent police accountability platforms, documenting misconduct by LVMPD officers through his YouTube channel.

18. Plaintiff's content constituted core First Amendment protected speech on matters of public concern—the conduct of those entrusted with state power.

19. The effectiveness of Plaintiff's advocacy made him a target for institutional retaliation by those whose misconduct he exposed.

B. Institutional Knowledge of Constitutional Requirements

20. LVPPA Training Videos Establish Institutional Knowledge: The Las Vegas Police Protective Association, representing LVMPD officers, issued official training videos establishing clear knowledge of constitutional limitations on police conduct toward citizens filming police activities.

21. October 3, 2018 LVPPA Training Video: More than four years before Plaintiff's arrest, LVPPA General Counsel David Roger issued a training video explicitly instructing officers that they "have no basis to arrest" citizens who are "merely videotaping" and warning that "if you force the issue and arrest them you could be sued civilly." See Exhibit 2, LVPPA Training Video Transcript (Oct. 3, 2018).

22. Specific Constitutional Guidance: The 2018 training video specifically instructed officers: "if they aren't obstructing your investigation... you have no basis to arrest them" and "if they walk a distance away and continue videotaping... there's nothing legally you can do." This directly contradicts Officer Bourque's claimed "21-foot rule" training.

23. Post-Incident Acknowledgment: On October 28, 2024, LVPPA issued a second training video specifically addressing "First Amendment Auditors," acknowledging that "they are there to provoke an arrest... so they can file a civil suit against the department" and instructing officers that "being an annoyance is not a crime." See Exhibit 3, LVPPA Training Video Transcript (Oct. 28, 2024).

24. Pattern Recognition: The 2024 video, created approximately 19 months after Plaintiff's arrest, demonstrates institutional awareness of ongoing constitutional violations and establishes that Plaintiff's case was part of a recognized pattern of improper arrests of First Amendment auditors.

C. Federal Court Findings Establishing Pattern of Constitutional Violations

25. On March 15, 2023, Officer Bourque arrested Plaintiff while he was lawfully filming an LVMPD traffic stop. See Exhibit 4, Body Worn Camera Video Documentation of March 15, 2023 Incident (available from Case No. 2:23-cv-00580-APG-EJY).

26. Federal Court Finding of Material Perjury: Bourque provided false testimony at trial, claiming Plaintiff "would not back up" despite video evidence showing Plaintiff did comply. United States District Judge Andrew P. Gordon judicially recognized this as material false testimony central to Plaintiff's wrongful conviction. See Exhibit 1 at 4-7.

27. Federal Court Finding of Constitutional Violations: Judge Gordon found that Bourque's conduct violated clearly established constitutional rights and denied Bourque's motion for summary judgment on claims of First Amendment retaliation, Brady violations, excessive force, and denial of due process. See Exhibit 1 at 35-38, 49-51.

28. Judicial Recognition of Pattern: The federal court's findings establish that Bourque engaged in documented constitutional violations against Plaintiff, including perjury, false arrest, and First Amendment retaliation.

D. Judge Zimmerman's Constitutional Violations

29. Judge Zimmerman demonstrated bias by denying Plaintiff's scheduling requests while granting identical requests from Officer Bourque.

30. Undisclosed Conflicts: Judge Zimmerman failed to disclose material connections to law enforcement, including prior marriage to a police officer and retention of his surname, creating actual bias in a case involving police criticism.

31. Unlawful Search: On March 19, 2024, Judge Zimmerman ordered bailiffs to search Plaintiff despite his having cleared courthouse security, without probable cause, warrant, or exigent circumstances.

32. Content-Based Suppression: The search was ordered solely to prevent Plaintiff from recording court proceedings—constituting content-based suppression of First Amendment activity.

33. Targeted Violation: No other courtroom attendees were searched, demonstrating the targeted nature of this Fourth Amendment violation.

34. Protected Speech: When Plaintiff objected to the constitutional violation by calling the bailiff a "pig," he engaged in protected expression under *Cohen v. California*, 403 U.S. 15 (1971).

35. Retaliatory Punishment: Judge Zimmerman imposed a six-month jail sentence—the harshest punishment she had ever imposed under NRS 197.190 in her judicial career.

36. Statistical Evidence of Discrimination: Review of 14 obstruction cases under NRS 197.190 handled by Judge Zimmerman between 2018-2024 reveals that every single defendant received dismissal of charges—except Plaintiff, who received an unprecedented six-month jail sentence. This 100% dismissal rate for all other defendants, contrasted with Plaintiff's harsh incarceration, establishes mathematically impossible disparate treatment based on his protected speech activities. See Exhibit 5, Complete Record of Judge Zimmerman's NRS 197.190 Obstruction Cases (2018-2024).

E. Coordinated Prosecutorial Vindictiveness

37. Initial Reasonable Recommendation: At the original sentencing hearing on March 17, 2024, Deputy District Attorney Agnes Botelho recommended a suspended sentence and a fine, consistent with standard practice for first-time misdemeanor obstruction cases.

38. Vindictive Reversal Without Justification: Approximately one week later, at the appeal bond hearing, Prosecutor Botelho completely reversed her position and recommended that Plaintiff remain incarcerated, despite no new facts, evidence, or legal authority supporting the harsher position.

39. Coordinated Escalation: This prosecutorial vindictiveness occurred in coordination with Judge Zimmerman's unprecedented six-month sentence and demonstrates a pattern of institutional retaliation escalating across different branches of Clark County government.

40. Due Process Violations: Judge Leavitt arbitrarily vacated Plaintiff's bond hearing procedures without legal justification, ensuring continued incarceration in furtherance of the coordinated retaliation.

F. Systematic Denial of Public Trial Rights

41. Violation of Public Trial Rights: Bailiffs systematically excluded Plaintiff's supporters from public proceedings, including licensed attorney Michael Ehline who came to observe. See Exhibit 6, Declaration of Michael Ehline and Other Excluded Supporters Regarding Public Trial Violations (to be submitted under separate cover).

42. Complete Closure Without Justification: This closure violated Sixth Amendment rights under *Waller v. Georgia*, 467 U.S. 39 (1984), as no compelling justification was provided.

43. Coordinated Suppression: The exclusion of supporters was coordinated with other retaliatory measures to isolate Plaintiff and suppress public awareness of the constitutional violations.

G. Institutional Pattern and Enhanced Monell Liability

44. Clark County Custom of Constitutional Violations: The evidence establishes that Clark County maintained policies, customs, and practices of violating the constitutional rights of First Amendment auditors and police critics, including:

a. Deliberate Indifference to Training: Despite official LVPPA training videos warning against constitutional violations, Clark County failed to ensure officer compliance with known legal requirements;

b. Coordinated Retaliation Policy: The coordination between law enforcement (Bourque's perjury), prosecution (Botelho's vindictive reversal), and judiciary (Zimmerman's unprecedented sentence) demonstrates an institutional custom of punishing police critics;

c. Pattern of Constitutional Violations: The 2024 LVPPA video acknowledging ongoing problems with First Amendment auditor arrests establishes that Plaintiff's case was part of a systematic pattern of constitutional violations.

45. Deliberate Indifference: Clark County officials acted with deliberate indifference to constitutional rights by:

a. Failing to train officers consistent with official LVPPA guidance; b. Failing to discipline officers who violated known constitutional requirements; c. Coordinating punishment across branches to retaliate against protected speech.

46. Final Policymaker Actions: The coordinated actions of Judge Zimmerman (judicial branch), Prosecutor Botelho (executive branch), and Officer Bourque (law enforcement) demonstrate policy-level decisions to violate constitutional rights in retaliation for criticism.

47. Continued Retaliation: On February 14, 2024, while Plaintiff's case was pending trial, LVMPD officers again arrested him during peaceful First Amendment activity, demonstrating ongoing institutional retaliation.

48. Training Failures: Clark County failed to train personnel on constitutional limits regarding First Amendment rights, Fourth Amendment protections, due process, and public trial rights, despite having official guidance available.

H. Vindication and Damages

49. Complete Vindication: On appeal, the court found Plaintiff's conduct was protected First Amendment activity and reversed his conviction.

50. Irreversible Harm: Despite vindication, Plaintiff served four months in jail, missed his cousin's death, and suffered irreversible personal and professional harm including the devastating experience of his mother visiting him in jail while wearing a jail jumpsuit.

## V. CLAIMS FOR RELIEF

### COUNT I: FIRST AMENDMENT RETALIATION

(42 U.S.C. § 1983 - Against All Individual Defendants)

51. Defendants retaliated against Plaintiff for constitutionally protected criticism of law enforcement in violation of clearly established First Amendment rights.

52. Under *Cohen v. California*, offensive speech directed at government officials receives First Amendment protection.

53. Plaintiff's police accountability advocacy and courtroom objections constitute protected speech on matters of public concern.

54. Enhanced Coordination Evidence: The prosecutorial vindictiveness, unprecedented judicial sentence, and law enforcement perjury demonstrate coordinated retaliation across branches of government.

55. LVPPA Training Defeats Immunity: The LVPPA training videos establish that Defendants knew their conduct violated clearly established constitutional rights, defeating any claim of qualified immunity.

56. These actions would deter persons of ordinary firmness from engaging in protected speech and were motivated by hostility toward Plaintiff's protected expression.

### COUNT II: PROSECUTORIAL VINDICTIVENESS

(42 U.S.C. § 1983 - Against Botelho)

57. Defendant Botelho engaged in prosecutorial vindictiveness by recommending a suspended sentence and fine on March 17, 2024, then reversing to recommend jail time one week later without any new evidence or legal justification.

58. This vindictive prosecution violated Plaintiff's due process rights and was motivated by retaliation for his protected speech activities.

59. The timing and coordination with other Defendants' retaliatory actions establishes a pattern of constitutional violations.

COUNT III: FOURTH AMENDMENT VIOLATIONS

(42 U.S.C. § 1983 - Against Zimmerman and John Doe Bailiff)

60. Judge Zimmerman ordered and John Doe Bailiff conducted unlawful search without probable cause, warrant, or exigent circumstances.

61. The search was content-based suppression of First Amendment activity disguised as security.

62. This conduct falls outside judicial immunity under *Forrester v. White*, 484 U.S. 219 (1988).

63. The search violated clearly established Fourth Amendment rights.

COUNT IV: SUBSTANTIVE DUE PROCESS VIOLATIONS

(42 U.S.C. § 1983 - Against Zimmerman and Leavitt)

64. Judge Zimmerman's bias and retaliatory conduct denied Plaintiff a neutral tribunal.

65. Judge Leavitt's arbitrary vacation of bond procedures constituted the type of arbitrary government action prohibited by the Due Process Clause.

66. These violations of clearly established due process rights shock the conscience.

COUNT V: SIXTH AMENDMENT VIOLATIONS

(42 U.S.C. § 1983 - Against John Does 1-10)

67. Defendants systematically excluded supporters from public proceedings and provided false information about hearings.

68. This violated Sixth Amendment public trial guarantees under *Waller v. Georgia*.

COUNT VI: EQUAL PROTECTION VIOLATIONS

(42 U.S.C. § 1983 - Against Zimmerman)

69. Judge Zimmerman imposed uniquely harsh punishment based on protected speech, treating Plaintiff differently from 14 consecutive defendants who all received dismissals for identical charges under NRS 197.190—a pattern that establishes discriminatory treatment as a matter of statistical certainty.

70. Mathematical Evidence of Discrimination: Judge Zimmerman dismissed obstruction charges for 14 consecutive defendants under the same statute (NRS 197.190) between 2018-2024, yet imposed a six-month jail sentence on Plaintiff—creating a statistical impossibility that can only be explained by discriminatory animus based on his protected speech criticizing law enforcement.

COUNT VII: BRADY VIOLATIONS

(42 U.S.C. § 1983 - Against Bourque and Botelho)

71. Bourque provided material false testimony judicially recognized by federal court.

72. Botelho failed to correct known false testimony, violating *Brady v. Maryland*, 373 U.S. 83 (1963).

73. These violations of clearly established due process rights directly caused wrongful conviction.

COUNT VIII: ENHANCED MONELL LIABILITY

(42 U.S.C. § 1983 - Against Clark County)

74. Clark County maintained customs, policies, and practices causing these constitutional violations, including:

a. Institutional Indifference to Training: Despite official LVPPA training establishing constitutional requirements, Clark County failed to ensure compliance;

b. Custom of Retaliation: The coordinated actions across law enforcement, prosecution, and judiciary establish an institutional custom of retaliating against police critics;

c. Deliberate Indifference: Clark County's continued constitutional violations despite official training demonstrates deliberate indifference to constitutional rights.

75. The LVPPA training videos establish Clark County had actual notice of constitutional requirements yet maintained policies allowing violations.

76. The post-incident 2024 LVPPA video acknowledging ongoing First Amendment auditor problems establishes that constitutional violations continued after Plaintiff's case, demonstrating systematic deliberate indifference.

77. Coordinated actions across multiple officials demonstrate institutional pattern of retaliation against law enforcement critics.

78. Clark County's deliberate indifference to constitutional rights and inadequate training directly caused these violations.

## VI. DAMAGES

79. As direct result of constitutional violations, Plaintiff suffered substantial damages including but not limited to:

a. Lost income from platform disruption and reputational harm; b. Severe emotional distress, including the devastating experience of his mother visiting him in jail while he wore a jail jumpsuit—trauma that requires no medical expertise to understand; c. Missing his cousin's death while wrongfully incarcerated; d. Business disruption and platform damage; e. Future earnings loss from damaged reputation; f. Pain and suffering from unlawful incarceration.

80. Enhanced Monell Damages: Substantial damages against Clark County for systemic constitutional violations with institutional knowledge and deliberate indifference.

81. Punitive Damages: Against individual defendants for willful violations of clearly established rights despite official training warning against such conduct.

VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests:

A. Compensatory damages in amounts to be proven at trial;

B. Enhanced punitive damages against individual defendants for willful constitutional violations despite institutional training;

C. Declaratory judgment that Defendants violated constitutional rights;

D. Attorney's fees and costs under 42 U.S.C. § 1988;

E. Injunctive relief preventing further retaliation;

F. Such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED,

/s/ Jose DeCastro
1258 Franklin Ave. Santa Monica, CA 90404
Telephone: (310) 963-2445
Email: deletelawz@gmail.com
*Plaintiff, Pro Se*

EXHIBIT LIST

Exhibit 1: Order Granting in Part Plaintiff's Motion for Reconsideration and Granting in Part Defendants' Motion for Summary Judgment, *DeCastro v. Las Vegas Metropolitan Police Department*, Case No. 2:23-cv-00580-APG-EJY (D. Nev. Sept. 12, 2024) [ECF No. 100]

Exhibit 2: LVPPA Training Video Transcript and Declaration of Authentication (October 3, 2018) - Establishing Institutional Knowledge of Constitutional Requirements

Exhibit 3: LVPPA Training Video Transcript and Declaration of Authentication (October 28, 2024) - Post-Incident Acknowledgment of First Amendment Auditor Pattern

Exhibit 4: Body Worn Camera Video Documentation of March 15, 2023 Incident (available from Case No. 2:23-cv-00580-APG-EJY upon Court's request)

Exhibit 5: Complete Record of Judge Zimmerman's NRS 197.190 Obstruction Cases (2018-2024) - Documenting 100% Dismissal Rate for 14 Defendants vs. Six-Month Sentence for Plaintiff

Exhibit 6: Declaration of Michael Ehline and Other Excluded Supporters Regarding Public Trial Violations (to be submitted under separate cover)

[Additional exhibits documenting damages, expert analysis, and supporting evidence to be submitted during discovery phase]

VERIFICATION

I, Jose DeCastro, declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on ___June 24___, 2025.

Jose DeCastro

*/s/ Jose DeCastro*

**DECLARATION OF MICHAEL EHLINE**

I, Michael Ehline, declare under penalty of perjury under the laws of the United States and the State of Nevada that the following is true and correct:

1. I am a licensed attorney admitted to practice law in California (State Bar No. 236202) and Texas (State Bar No. 24130824). I am also a United States Marine Corps veteran.

2. On March 26, 2024, I traveled to the Clark County courthouse in Las Vegas, Nevada, to observe Jose DeCastro's appeal bond hearing as a member of the public.

3. I arrived approximately 15 minutes prior to the scheduled hearing time. I identified myself to security and indicated my purpose was to observe the proceedings as a member of the public and potential legal advisor.

4. I was categorically denied entry to the courtroom by courthouse personnel, who informed me the hearing was not open to the public. I received no explanation for the exclusion, nor was I informed of any specific security or capacity-related concern.

5. I observed that other members of the public and supporters of Mr. DeCastro were also denied entry and were confused about the reason for the courtroom closure.

6. At no point did I observe any public posting or judicial order declaring the courtroom closed or limited to authorized personnel.

7. Based on my legal training and professional experience, the complete exclusion of the public from a hearing of this nature raises serious Sixth Amendment concerns and violates clearly established law regarding public access to criminal proceedings.

8. I was prepared to observe only and had no intention of participating as counsel unless requested. My presence was solely to witness the judicial process as a member of the public and as someone concerned with due process.

9. I have been licensed in California since 2005 and in Texas since 2022. I have observed and participated in numerous courtroom proceedings across multiple jurisdictions.

10. In my legal career, I have never seen a bond hearing closed in this manner without a specific finding on the record justifying such closure.

11. It is my professional opinion that the closure was arbitrary and appeared designed to avoid public scrutiny of prior judicial actions taken against Mr. DeCastro.

12. My experience as both a Marine and an attorney has given me deep respect for constitutional principles and the importance of transparent judicial proceedings. Denying public access in this context undermines public confidence in the courts.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 24th, 2025, at Summerlin, Nevada

*[signature]*

**Michael Ehline**

United States Marine Corps Veteran

State Bar No. 236202 (California)

State Bar No. 24130824 (Texas)