**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JOSE DECASTRO,

Plaintiff

v.

CLARK COUNTY, NEVADA, et al.,

Defendants

Case No.: 2:25-cv-00899-APG-BNW

**Order Granting Motion to Dismiss**

[**ECF No. 16**]

Jose DeCastro sues Judge Ann Zimmerman, Judge Michelle Leavitt, Clark County Deputy District Attorney Agnes Botelho, Las Vegas Metropolitan Police Department (LVMPD) Officer Branden Bourque, and several John Doe bailiffs, each in their individual capacity under 42 U.S.C. § 1983. He also sues Clark County, Nevada for the conduct of each of these defendants and LVMPD under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). In a nutshell, DeCastro alleges the defendants engaged in a coordinated retaliation campaign against him because of his filming and criticism of law enforcement.

Botelho and Clark County move to dismiss the claims against them. ECF No. 16. I grant the motion. Prosecutorial immunity shields Botelho from § 1983 liability for the actions that DeCastro alleges against her. Further, DeCastro may not bring a *Monell* claim against Clark County for the actions of LVMPD officers, the judges, or the bailiffs. Lastly, he fails to sufficiently plead a *Monell* claim against Clark County for Botelho's actions. Because I have now ruled on the motion to dismiss, I deny as moot DeCastro's objection to Judge Weksler's order staying discovery.

/ / / /

/ / / /

## I. Facts

This suit arises out of Officer Bourque's arrest of DeCastro, who was filming a traffic stop that Bourque was conducting. ECF No. 7 at 5; *see DeCastro v. Las Vegas Metro. Police Dep't*, No. 2:23-cv-00580-APG-EJY, 2024 WL 4189939 (D. Nev. Sept. 12, 2024). According to the complaint, Judge Leavitt "arbitrarily vacated [DeCastro's] bond hearing procedures without legal justification, ensuring [his] continued incarceration in furtherance of the coordinated retaliation." ECF No. 7 at 7. DeCastro alleges that Bourque gave perjured testimony at the criminal trial. *Id.* at 5, 7. Botelho was the prosecutor, and DeCastro alleges she committed *Brady* violations because she knew Bourque's testimony was false and she failed to correct it, which caused him to be wrongfully convicted. *Id.*; *Brady v. Maryland,* 373 U.S. 83, 87 (1963). Additionally, DeCastro alleges that Botelho reversed course from recommending a standard suspended sentence and a fine to recommending incarceration. *Id.* at 7. Judge Zimmerman presided over the criminal prosecution in state court and sentenced DeCastro. ECF No. 7 at 6. DeCastro alleges Judge Zimmerman ordered bailiffs to search him in court without probable cause or exigent circumstances and imposed the harshest punishment she has ever imposed for his offense. *Id.* at 6.

DeCastro alleges that Botelho's "prosecutorial vindictiveness occurred in coordination with Judge Zimmerman's unprecedented six-month sentence and demonstrates a pattern of institutional retaliation escalating across different branches of Clark County government." *Id.* He concludes that the "coordinated actions of Judge Zimmerman (judicial branch), Prosecutor Botelho (executive Branch), and Officer Bourque (law enforcement) demonstrate policy-level decisions to violate constitutional rights in retaliation for criticism." *Id.* at 9. DeCastro also alleges generally that "Clark County maintained customs, policies, and practices causing these

constitutional violations." *Id.* at 13. These include "institutional indifference to training," a "custom of retaliation," and "deliberate indifference." *Id.* (simplified). Botelho and Clark County move to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II. Analysis

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017) (quotation omitted). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

The allegations of a pro se complaint "are held to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quotation omitted). As the moving party, the defendant has the burden to show that the plaintiff has not plausibly alleged a claim upon which relief can be granted. *Sintigo v. Pompeo*, No. 2:19-cv-00465-APG-VCF, 2020 WL 14053449, at *3 (D. Nev. July 20, 2020); *see also Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (holding that on a 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented"); *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006) (holding that "on a 12(b)(6) motion, the moving party bears the burden of demonstrating that the plaintiff failed to state a claim").

Federal Rule of Civil Procedure 15(a)(2) provides that I should grant leave to amend "freely . . . when justice so requires." I should deny leave to amend only if there is a reason not to allow it, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, "dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013) (quotation omitted).

**A. I dismiss the § 1983 claims against Botelho because she is entitled to absolute prosecutorial immunity.**

Botelho argues she is entitled to absolute prosecutorial immunity. DeCastro responds that prosecutorial immunity does not apply to Botelho's "post-sentencing escalation following the exercise of appellate rights or evidence handling that arguably crossed into non-advocacy functions." ECF No. 21 at 4.

A prosecutor enjoys absolute immunity from suit when performing functions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Thus, "[a] prosecutor is protected by absolute immunity from liability for damages under § 1983 when performing the traditional functions of an advocate." *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir.2005) (quotation omitted). This includes immunity even from a "suit alleging that he maliciously initiated a prosecution, used perjured testimony at trial, or suppressed material evidence at trial." *Id.* at 637 (citing *Imbler*, 424 U.S. at 430).

A deputy district attorney is entitled to absolute immunity for their conduct at both sentencing and bail hearings. *Ismail v. Cnty. of Orange*, 676 F. App'x 690, 691 (9th Cir. 2017)

("requesting a defendant be remanded into custody, adding or dropping charges, [and] requesting high bail . . . are prosecutorial decisions intimately associated with the judicial phase of the criminal process" and thus are protected by absolute prosecutorial immunity). Decisions made "in connection with a bail application are best understood as components of the initiation and presentation of a prosecution, and therefore are protected by absolute immunity." *Cruz v. Kauai Cnty.*, 279 F.3d 1064, 1067 n.3 (9th Cir. 2002) (quoting *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1149 (2d Cir.1995)); *see also Brown v. California Dep't of Corr.*, 554 F.3d 747, 750 (9th Cir. 2009) (prosecutors are "afforded absolute immunity for parole recommendations" because they "are a continuation of the sentencing process"); *Pinaud*, 52 F.3d at 1149 (absolute immunity afforded to a deputy district attorney who allegedly sought to improperly increase bail). In essence, "prosecutorial immunity protects eligible government officials when they are acting in their official role as advocate for the State." *Brewer v. Grierson*, No. 2:10-cv-01111-RLH-RJJ, 2010 WL 4608264, at *2 (D. Nev. Nov. 4, 2010).[1]

State prosecutors also enjoy absolute immunity from suit for *Brady* violations. "A prosecutor's decision not to preserve or turn over exculpatory material before trial, during trial, or after conviction is a violation of due process under [*Brady*]. It is, nonetheless, an exercise of the prosecutorial function and entitles the prosecutor to absolute immunity from a civil suit for damages." *Broam v. Bogan*, 320 F.3d 1023, 1030 (9th Cir. 2003); *see also Imbler*, 424 U.S. at 431–32 n.34 (noting that the "deliberate withholding of exculpatory information" is included within the "legitimate exercise of prosecutorial discretion").

[1] DeCastro's second claim is for "Prosecutorial Vindictiveness." ECF No. 7 at 10-11. Vindictive prosecution is a defense applicable in the criminal context, not a cognizable basis for a claim under § 1983. *Puentes v. Cnty. of Santa Clara*, No. C 11-1228 PJH, 2012 WL 253232, at *4 (N.D. Cal. Jan. 26, 2012), *aff'd*, 606 F. App'x 339 (9th Cir. 2015). "At best, plaintiff's claim may be analogized instead to a malicious prosecution claim." *Id.*

Absolute prosecutorial immunity protects Botelho's decisions made in her role as an advocate for the state at the sentencing and bond application phases of the judicial process, as well as her alleged mishandling of potentially exculpatory evidence. Because amendment would be futile, I dismiss DeCastro's § 1983 claims against Botelho with prejudice.

**B. I dismiss the *Monell* claims against Clark County because they are inadequately pleaded.**

Under *Monell*, a § 1983 claim against a municipality must allege that a municipal policy or custom caused a constitutional injury. 436 U.S. at 694. General respondeat superior liability does not exist in the *Monell* context. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Rather, there are four bases for a valid *Monell* claim: "(1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019).

DeCastro alleges that "Clark County maintained customs, policies, and practices" causing the alleged constitutional violations. ECF No. 1 at 13. The complaint also states that the "coordinated actions of Judge Zimmerman (judicial branch), Prosecutor Botelho (executive branch), and Officer Bourque (law enforcement) demonstrate policy-level decisions to violate constitutional rights in retaliation for criticism." *Id.* at 9. However, the complaint does not allege acts by a final policymaker as a basis for his *Monell* claim. *Id.* at 13. Instead, DeCastro asserts (1) a custom of retaliation and (2) a deliberately indifferent failure to train. *Id.* at 13–14. In his response brief, DeCastro contends that he is asserting "single decisions by a final policymaker . . . [as] an independent basis for municipal liability." ECF No. 21 at 5. I liberally construe his complaint as alleging all four potential bases of *Monell* liability.

Clark County argues first that it is not responsible for the acts of LVMPD or the judges. ECF No. 16 at 7–8. It also argues that it is not a "person" subject to § 1983 liability for the acts of Botelho, who was serving as "an arm of the state" in her role as prosecutor. *Id.* at 8–10. In the alternative, it argues that DeCastro has failed to meet his pleading burden, as he "does not actually allege the existence of any expressly adopted policy, nor does he allege facts to show a longstanding practice or custom or any decision of a County official that amounts to an official policy." *Id.* at 12.

1. <u>DeCastro cannot sustain *Monell* claims against Clark County for the actions of LVMPD, Bourque, the John Doe bailiffs, or the judges.</u>

Clark County cannot be liable for LVMPD's or its officers' actions because LVMPD is its own separate legal entity. Nev. Rev. Stat. § 280.280(3)–(4); ECF No. 30 at 4–5. LVMPD is "a political subdivision of the state and may sue or be sued in its own name." *Coleman v. LVMPD*, No. 2:25-cv-01721-APG-MDC, 2026 WL 1992703 at *3 (D. Nev. July 8, 2026). I therefore dismiss DeCastro's claims against Clark County to the extent they are based on Bourque's or LVMPD's actions.

As for the judges, Nevada state courts are arms of the State, not the county. Nev. Const., art. 6 § 1. "[T]he legislative and executive branches are strictly prohibited from infringing on the court's 'incidental powers reasonable and necessary to carry out the duties required for the administration of justice.'" *City of Sparks v. Sparks Mun. Ct.*, 302 P.3d 1118, (Nev. 2013) (en banc) (quoting *Goldberg v. Eighth Judicial Dist. Court*, 572 P.2d 521, 522 (Nev. 1977). The Ninth Circuit has held that where, as here, a judge "was functioning as a state judicial officer, [their] acts and omissions were not part of a city policy or custom" because the municipality "lack[ed] the power to require, control, or remedy" the actions. *Eggar v. City of Livingston*, 40

F.3d 312, 316 (9th Cir. 1994); *see also Woods v. City of Michigan City*, 940 F.2d 275, 279 (7th Cir. 1991) (noting that the plaintiff, by identifying the judge's acts "as the source of the constitutional deprivation, detaches the local governments from the unconstitutional policy" because under the relevant state law, the judge was a state, not municipal, officer). Clark County has no control over the judges' official actions and therefore cannot be held liable for them. So I dismiss DeCastro's claims against Clark County to the extent they are based on the judges' actions. Because amendment would be futile, I dismiss these claims against Clark County with prejudice.

2. DeCastro has not adequately pleaded *Monell* claims against Clark County for Botelho's actions.

Clark County argues that it is not subject to § 1983 liability for Botelho's actions because "a district attorney's office in Nevada [acts] as an arm of the state [as opposed to the county] when it prosecutes crimes." ECF No. 16 at 9. Clark County points to several Ninth Circuit cases in support, including *Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1030 (9th Cir. 2000); *Jackson v. Barnes*, 749 F.3d 755, 767 (9th Cir. 2014); and *Davis v. San Diego Dist. Att'y*, 765 F. App'x 409 (9th Cir. 2019). DeCastro responds that under Nevada law, district attorneys are county officials, citing Nevada Revised Statutes § 252.080. He also argues that *Weiner* is inapplicable because it "addressed only individual prosecutorial immunity, not municipal liability for policymaker decisions or ratification."[2] ECF No. 21 at 5. DeCastro asserts that he adequately pleaded a custom of retaliation, failure to train or discipline, and final policymaker action. *Id.*

[2] Contrary to DeCastro's assertions, *Weiner* addressed municipal liability for final policymaker decisions. 210 F.3d at 1028 ("In this case, the parties concede the district attorney is the final decision-maker in determining whether to proceed with a criminal prosecution. The question, therefore, is whether the district attorney acted as a county official or as a state official when he

Contrary to Clark County's assertions, *Weiner*, *Jackson*, and *Davis* do not stand for the proposition that a district attorney's office in Nevada acts as an arm of the state when it prosecutes crimes. *Weiner* instead states that the "question [of whether a county prosecutor is a state or municipal official] is dependent on state law." 210 F.3d at 1028 (citing *McMillian v. Monroe Cnty.*, 520 U.S. 781, 786 (1997)). Clark County cites cases from California, where a district attorney's office "acts as a state office with regard to actions taken in its prosecutorial capacity." *Jackson*, 749 F.3d at 767.

However, Clark County did not address the Ninth Circuit's decision in *Webb v. Sloan*, where it held that in Nevada, "principal district attorneys are final policymakers for the municipality with respect to the conduct of criminal prosecutions" and deputy district attorneys may also be final policymakers under Nevada Revised Statutes § 252.070(1). 330 F.3d 1158, 1164-65 (9th Cir. 2003). Section 252.070(1) states that "district attorneys may appoint deputies, who are authorized to transact all official business relating to those duties of the office set forth in NRS 252.080[[3]] and 252.090[[4]] to the same extent as their principals." Thus, because district attorneys in Nevada are final policymakers over criminal prosecutions, and because deputy district attorneys may be authorized to transact official business to the same extent as the district attorney, they may also qualify as final policymakers for criminal prosecutions.[5]

---

decided to proceed with Weiner's criminal prosecution. The answer to that question is dependent on state law.").

[3] Section 252.080 states that the "district attorney in each county shall be public prosecutor therein."

[4] Section 252.090 states that the "district attorney shall: 1. Attend the district courts held in his or her county, for the transaction of criminal business. 2. Attend justice courts in his or her county, when required by justices of the peace, and conduct all prosecutions on behalf of the people for public offenses."

[5] Clark County also cites *Hubbard v. Percival*, which relies on cases interpreting California and Washington law. No. 2:19-cv-01809-KJD-EJY, 2019 WL 8405550, at *2 (D. Nev. Dec. 4,

But the "statutory text is permissive, not mandatory: Deputies *may* transact official business to the same extent as their principals." *Webb*, 330 F.3d at 1165 (emphasis in original). "Conceivably, the principal prosecutor could constrain that authority."[6] *Id.*

Although Clark County did not address *Webb*, I nevertheless grant its motion because DeCastro did not plausibly allege facts demonstrating that Botelho had final policymaking authority over his case. He alleges that the coordinated actions of Judge Zimmerman, Botelho, and Bourque represent a final policymaker action of some kind, but he does not tie Botelho's alleged unspecified authority to his case or even to her role as a deputy district attorney. ECF No. 7 at 9. In other words, he does not allege that Botelho is a final policymaker over his case, nor does he allege that the "principal district attorney actually has [not] constrained the deputies' authority." *Webb*, 330 F.3d at 1165; *see also Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999) (finding significant that if the deputy prosecutor disagreed with the principal prosecutor's decision to prosecute, "she had to contact [the principal prosecutor]; she could not decide unilaterally to drop the case"). Therefore, his current allegations do not plausibly allege a *Monell* claim based on the acts of a final policymaker.

DeCastro's other *Monell* allegations also fail. "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the

---

2019), *report and recommendation adopted*, No. 2:19-cv-1809-KJD-EJY, 2020 WL 1853605, at *2 (D. Nev. Apr. 13, 2020). *Hubbard* is not binding on me and did not address *Webb*, which is controlling Ninth Circuit authority. The County further cites Article VI § 13 of the Nevada Constitution and Nevada Revised Statutes § 252.080. But the Ninth Circuit has already interpreted these authorities, and binding precedent affords me no discretion to construe them as the county argues I should. *See Botello v. Gammick*, 413 F.3d 971, 979 (9th Cir. 2005) (county's argument that the district attorney was acting as a Nevada state policymaker when deciding whether to prosecute cases was "foreclosed by [the Ninth Circuit's] holding in *Webb v. Sloan*").

[6] In *Webb*, the defendant municipality "presented no evidence that its principal district attorney actually has constrained the deputies' authority. In fact, [the municipality] presented evidence to the contrary." *Id.*

plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (quotation omitted). The complaint contains vague and conclusory allegations that "Clark County maintained customs, policies, and practices causing [Botelho's] constitutional violations" that "demonstrate[] [a] deliberate indifference to constitutional rights." ECF No. 7 at 13. But he does not allege any specific facts supporting this conclusion. Therefore, with respect to Botelho's alleged actions, he has not adequately alleged any of the four bases for *Monell* liability. So I dismiss without prejudice DeCastro's remaining *Monell* claims as insufficiently pleaded.[7] Because it is not clear that amendment would be futile, I grant him leave to amend only his *Monell* claim against Clark County based on Botelho's conduct. *See Sonoma Cnty.*, 708 F.3d at 1118 ("As a general rule, dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment.") (simplified).

## III. Conclusion

I THEREFORE ORDER that defendant Clark County and defendant Agnes Botelho's motion to dismiss (**ECF No. 16**) is **GRANTED**. I dismiss with prejudice DeCastro's claims against Botelho in her individual capacity. I dismiss with prejudice his *Monell* claims against Clark County based on the conduct of LVMPD, Branden Bourque, Judge Ann Zimmerman, and

[7] DeCastro also asserts claims against John Doe bailiffs. ECF No. 7 at 10–12. Clark County did not address its potential liability for these defendants' acts in its motion. To the extent DeCastro's complaint alleges Clark County is liable under *Monell* for the bailiffs' actions, he does not allege facts to show a plausible custom or practice related to these defendants, that they are final policymakers for Clark County, that Clark County has control over state court bailiffs' conduct, or that it has any role in training them. Because DeCastro's conclusory allegations fail to allege any plausible *Monell* claim, I dismiss his *Monell* claim against Clark County related to the bailiffs as well. If DeCastro amends his *Monell* claim and intends to include the bailiffs' conduct as a basis for Clark County's liability, he should consider these issues before amending.

Judge Michelle Leavitt. I dismiss without prejudice his *Monell* claim against Clark County based on the conduct of Agnes Botelho and the bailiffs.

I FURTHER ORDER that DeCastro may file a second amended complaint to assert *Monell* claims consistent with this order by October 21, 2026 if sufficient facts exist to plausibly allege such claims.

DATED this 28th day of September, 2026.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE