Jose M. DeCastro
5350 Wilshire Blvd
PO Box 36143
Los Angeles, CA 90036
(310) 963-2445
Email: chille@situationcreator.com
Plaintiff, Pro Se

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

JOSE M. DECASTRO,
Plaintiff,
vs.
CLARK COUNTY, NEVADA, et al.,
Defendants.

Case No. 2:25-cv-00899-APG-BNW

**PLAINTIFF'S OPPOSITION TO DEFENDANT ANN E. ZIMMERMAN'S MOTION TO DISMISS (ECF NO. 44)**

Plaintiff Jose M. DeCastro, appearing pro se, opposes Defendant Ann E. Zimmerman's Motion to Dismiss the First Amended Complaint (ECF No. 44). This Opposition is filed under Local Rule 7-2(b) and within the time set by the Court's Minute Order of November 2, 2026 (ECF No. 46). It is based on the following Memorandum of Points and Authorities, the certified state court records attached as Exhibits 1 through 3, Plaintiff's separately filed Request for Judicial Notice, the papers on file, and any argument the Court may allow.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In the exchange in which she singled out Plaintiff, Judge Zimmerman stated one reason: "I don't really want to be part of your You Tube channel." Ex. 1 at 4:5-6. Everyone else in the courtroom was told to surrender a phone or leave, and she had approved two media requests to record the same trial. Id. at 3:14-20. Only Plaintiff, a journalist, was ordered to empty his pockets, and then his suit and pants pockets. Id. at 3:19-20, 5:17-18. That order was not a rule for the courtroom; it was a search of one person because of what he

publishes. Judicial immunity protects judicial acts, and a targeted search of a person is not one.

Judge Zimmerman asks the Court to hold that everything she did to Plaintiff was a judicial act. The certified transcript of the March 19, 2024 trial shows otherwise. Before the trial began, she announced a rule for the courtroom: anyone who wished to stay had to surrender their phone. That rule, as applied to a member of the press and public at an open criminal trial, violated the First Amendment, see Part V.C, but the Court need not decide that question to deny this motion. In the same breath, she did something different. She ordered one person, Plaintiff, to "empty all of his pockets," and when he asked whether his phones had to be completely off, she answered: "I don't really want to be part of your You Tube channel." Ex. 1 at 3:19-20, 4:5-6. After Plaintiff refused to hand his phones to the marshal, called the marshal a "pig," and then apologized to the Court, she ordered him to go further: "Suit pocket. Pants pocket." Id. at 5:17-18. Plaintiff had already been screened at the courthouse entrance. ECF No. 7 ¶ 31.

A general rule governing everyone in the courtroom is courtroom management. An order compelling one person, singled out for his journalism, to empty his pockets for inspection is a search. Searches of persons are a law-enforcement function, one the Fourth Amendment assigns to officers and subjects to review by neutral judges. Absolute immunity "is justified and defined by the functions it protects and serves, not by the person to whom it attaches." Forrester v. White, 484 U.S. 219, 227 (1988). Judge Zimmerman, who bears the burden on her defense, Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 432 (1993), has not shown that the individualized search of Plaintiff was a judicial function. The motion should be denied as to Count III and as to Count I to the extent it rests on the search.

The same record bears on the rest of the case. At sentencing, Judge Zimmerman rejected the State's request for a fine and a suspended sentence, commented that "[t]his helps his You Tube channel," and imposed 180 days in custody, to begin immediately. Ex. 1 at 62:20-63:5, 63:15-23. Plaintiff's conviction was later reversed because his conduct was "protected by the First Amendment." Ex. 3 at 5:5-7. Plaintiff acknowledges the binding

authority on sentencing immunity and opposes the motion as to Counts IV and VI to preserve his position, as set out below. If the Court grants the motion in any part, Plaintiff asks that the dismissal be limited as set out in Section V.E and that he be given leave to amend.

## II. THE CERTIFIED STATE COURT RECORDS

Plaintiff relies on three records filed in the Eighth Judicial District Court in DeCastro v. State, Case No. C-24-381730-A: (1) the certified Reporter's Transcript of Proceedings of the March 19, 2024 trial in State v. DeCastro, Las Vegas Justice Court Case No. 23CR013015, prepared by Christa D. Broka, CCR No. 574, and filed April 22, 2024 (Exhibit 1); (2) the certified Reporter's Transcript of the April 1, 2024 hearing in the same case, prepared by the same reporter and filed April 22, 2024 (Exhibit 2); and (3) the Order Granting Appeal filed July 19, 2024 (Exhibit 3). He has filed a separate Request for Judicial Notice of these records under Federal Rule of Evidence 201.

Judge Zimmerman's own motion relies on the same proceedings, ECF No. 44 at 2, 6-9, so the transcripts complete the record she invokes. Considering judicially noticed records does not convert the motion into one for summary judgment. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). Citations to Exhibits 1 and 2 are to the page and line of the certified transcript (for example, Ex. 1 at 4:5-6). Citations to Exhibit 3 are to the page and line of the Order itself. The exhibits are stamped as follows: Exhibit 1, pages 1-18; Exhibit 2, pages 1-4; Exhibit 3, pages 1-7. Those stamped numbers differ from the transcript and Order pages because each exhibit begins with a cover page and the transcripts are reproduced four pages to a sheet; they are for locating each sheet only.

## III. RELEVANT FACTS

### A. The allegations of the First Amended Complaint.

The verified FAC alleges that on March 19, 2024, Judge Zimmerman ordered bailiffs to search Plaintiff even though he had already cleared courthouse security, without a warrant, probable cause, or exigent circumstances, ECF No. 7 ¶ 31; that the search was ordered to prevent Plaintiff from recording, id. ¶ 32; that no other courtroom attendee was searched, id. ¶ 33; and that Judge Zimmerman then imposed a six-month jail sentence, while each of the

fourteen other defendants charged before her under NRS 197.190 between 2018 and 2024 had the charge dismissed, id. ¶¶ 35-36. Plaintiff's conviction was reversed on appeal after he had served four months. Id. ¶¶ 49-50.

**B. The certified record of March 19, 2024.**

The certified transcript confirms and adds to these allegations. When the case was called, Judge Zimmerman stated:

> So I have signed two media requests that permit recording or photographing these proceedings. I have not granted any other request to record or live stream these proceedings. So I need Mr. Decastro and everybody else who wants to stay in the courtroom to surrender their phones or you can leave. I need Mr. Decastro to empty all of his pockets.

Ex. 1 at 3:14-20. When Plaintiff asked whether his phones had to be completely off, she answered: "Yep. I don't really want to be part of your You Tube channel." Id. at 4:5-6. Plaintiff said he would not give his phones to the marshal and called the marshal a "pig"; Judge Zimmerman warned him that she would hold him in contempt. Id. at 4:11-21. Plaintiff apologized to the Court; she told him to apologize to the marshals instead, because "it is their job to maintain the safety and security of the courtroom," and warned him again about contempt. Id. at 4:22-5:15. She then ordered: "So I need you to empty your pockets too. Suit pocket. Pants pocket." Id. at 5:17-18. Plaintiff objected, "This is illegal. This is a violation of my Fourth Amendment," and she responded, "No, it isn't." Id. at 5:19-21. Plaintiff stated, "Your guy took my phone." Id. at 6:11. Defense counsel, by contrast, was told only to turn his phone off: "No, I'm not going to take your lawyer's phone. He's an officer of the court." Id. at 6:7, 6:14-15. No one else in the courtroom was ordered to empty his or her pockets. See id. at 3-6.

At the close of the bench trial, the State asked for an impulse control class, a $500 fine or community service, and a 90-day suspended sentence on each count, to run concurrently. Id. at 61:24-62:6. Defense counsel asked for credit for time served. Id. at 62:8-10. Judge Zimmerman responded that Plaintiff "wants to get arrested," that "[t]his helps his You Tube channel," that "[h]e called the officers here in my courtroom today pigs," and that

"apparently he hates every law enforcement officer in the United States." Id. at 62:20-63:5. She then sentenced him to 90 days on each count, consecutive, "for a total of 180 days in custody," and when Plaintiff asked whether the sentence was suspended, she said: "Oh, no. It's going to start right now." Id. at 63:15-23.

**C. The April 1, 2024 hearing and the reversal.**

At the hearing on Plaintiff's motion for bail pending appeal, defense counsel noted that "a whole bunch of people . . . wanted to come to court." Ex. 2 at 3:22-23. Judge Zimmerman denied bail, citing what Plaintiff was "publishing online" and in calls from the jail. Id. at 7:21-8:12. She also stated that she "did not have a problem with him filming" and did not sentence him for his behavior in court. Id. at 8:25-9:13. On July 19, 2024, the district court reversed the conviction, finding that Plaintiff's conduct, though "offensive and annoying," was "ultimately . . . protected by the First Amendment to the U.S. Constitution." Ex. 3 at 5:5-7.

## IV. LEGAL STANDARD

On a motion under Rule 12(b)(6), the Court accepts well-pleaded factual allegations as true and construes them in the light most favorable to the plaintiff. Kwan v. SanMedica Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017). The moving party bears the burden of showing that no claim has been stated. ECF No. 38 at 3. Pro se pleadings are held to less stringent standards than those drafted by lawyers. Hughes v. Rowe, 449 U.S. 5, 9 (1980).

Absolute immunity is an affirmative defense, and "[t]he proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity." Antoine, 508 U.S. at 432. Officials who seek exemption from personal liability "have the burden of showing that such an exemption is justified by overriding considerations of public policy." Forrester, 484 U.S. at 224.

## V. ARGUMENT

**A. Immunity turns on the function performed, not on the identity of the actor.**

Whether an act is "judicial" depends on "the nature of the act itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e.,

whether they dealt with the judge in his judicial capacity." Stump v. Sparkman, 435 U.S. 349, 362 (1978). In Forrester, the Supreme Court held that a state judge was not immune for demoting and firing a probation officer, even though he acted in his official capacity and in his own courthouse, because the act was not adjudicative. 484 U.S. at 229-30.

The Ninth Circuit has applied this principle inside the courtroom. In Gregory v. Thompson, 500 F.2d 59, 64-65 (9th Cir. 1974), the court held that a judge who personally used physical force to remove a person from his courtroom was not entitled to absolute immunity for that act. The judge had authority to control his courtroom and to order the person removed, but the physical act was not a function normally performed by a judge. Id. A judge's general authority over the courtroom therefore does not make every act taken in its name a judicial act.

**B. The individualized search of Plaintiff was a law-enforcement act, not a judicial one.**

**1. The record separates a courtroom rule from a search of one person.**

The certified transcript shows two different acts. The first was a rule of general application: everyone who wished to remain in the courtroom had to surrender their phone, because only two media requests had been approved. Ex. 1 at 3:14-20. For purposes of immunity, that is courtroom management, and Plaintiff's immunity argument does not depend on it.

The second act was different in kind. Judge Zimmerman directed that one person, and only one, "empty all of his pockets," and then, after he refused to hand his phones to the marshal and then apologized, that his "[s]uit pocket" and "[p]ants pocket" be emptied as well. Id. at 3:19-20, 5:17-18. That was not a rule for the courtroom. Under an order directed at him by name, Plaintiff was compelled to empty his pockets, including his suit jacket and pants pockets, and surrender his phones to the marshal, although he had already passed entry screening. ECF No. 7 ¶ 31. An order compelling a person to empty his pockets and surrender their contents is a search of his person and effects, subject to the Fourth Amendment, whether or not an officer's hands enter the pockets. Plaintiff objected on the record that the

order was "illegal" and "a violation of my Fourth Amendment," and Judge Zimmerman overruled him: "No, it isn't." Ex. 1 at 5:19-21. What followed was submission to a judge's order, not consent. See Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968). No warrant, probable cause finding, or exigency existed. ECF No. 7 ¶¶ 31, 60. Courtroom security can justify screening everyone at the door, and Plaintiff had already passed that screening. It does not explain singling out one screened person, by name, for an order no one else received. Whatever the marshals' general role in maintaining "the safety and security of the courtroom," Ex. 1 at 5:8-9, no one else was singled out, and the only reason Judge Zimmerman stated in that exchange was his YouTube channel: "I don't really want to be part of your You Tube channel." Id. at 4:5-6.

**2. Searching a person is the function of an officer, not of a judge.**

The Fourth Amendment separates the officer who searches from the judge who reviews. Its protection "consists in requiring that [the] inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10, 14 (1948). When a judge issues a warrant on probable cause, she performs a judicial function. When a judge directs, on the spot and without process, that one specific person be compelled to empty his pockets so they can be inspected for a device, she is not reviewing a search; she is ordering one. She was not adjudicating a motion or issuing a warrant; she was directing a search. What makes that act non-judicial is its nature, a search of a person for a device, not who carried it out. It is not a function "normally performed by a judge." Stump, 435 U.S. at 362.

A judge who wishes to regulate recording has judicial tools for doing so: a general rule, as Judge Zimmerman in fact announced; an admonition; exclusion; or contempt proceedings with notice and an opportunity to be heard. Each of those is an exercise of adjudicative authority subject to appellate review. Compelling one person to empty his pockets is not. The fact that Plaintiff asserted, on the record, that the order violated the Fourth Amendment, and was told "No, it isn't," Ex. 1 at 5:19-21, does not convert the search into an adjudication. The search had already been ordered.

**3. Mireles does not control.**

Mireles v. Waco, 502 U.S. 9 (1991), on which Defendant principally relies, acknowledged that "a judge's direction to police officers to carry out a judicial order with excessive force is not a 'function normally performed by a judge,'" and found immunity because the underlying act, directing officers to bring counsel in a pending case before the court, was itself a judicial function. Id. at 12-13. Securing the attendance of counsel in a pending case is an exercise of the court's power over the case. Compelling a person who is already present, has already been screened, and has already been subjected to the general phone rule to empty his pockets secures nothing that the case required. The out-of-circuit decisions Defendant cites, Stevens v. Osuna, 877 F.3d 1293 (11th Cir. 2017), and Cameron v. Seitz, 38 F.3d 264 (6th Cir. 1994), are not binding. Stevens held that an immigration judge's closing of hearings and exclusion of an observer from the courtroom were judicial acts; exclusion is itself a judicial tool, see supra Part V.B.2, and neither Stevens nor Cameron involved an order to search anyone.

Defendant characterizes the order as directing courtroom personnel to enforce a restriction on unauthorized recording during a pending trial, and Mireles directs the Court to look to the general function of an act, not to the particular act. Id. at 13. Plaintiff does not dispute that enforcing a recording rule is a judicial function, or that an order does not become executive because officers carry it out. Id. The question is whether this order was enforcing the rule at all. It was not. The rule gave each person the choice to surrender a phone or leave, and Plaintiff's counsel was told only to turn his off. Ex. 1 at 3:17-20, 6:7, 6:14-15. Plaintiff's phones were taken. Id. at 6:11. The order to empty all of his pockets, and then his suit and pants pockets, demanded more of Plaintiff than the rule demanded of anyone, and the only reason stated in that exchange was his YouTube channel. Id. at 4:5-6. An order that goes beyond any rule, aimed at one person, to search him for a device, has the nature of an officer's search, not a judge's enforcement of courtroom order. That is what distinguishes Mireles, where the order to bring counsel before the court was itself the judicial act and the officers' conduct was only the manner of carrying it out. Plaintiff does not contend that the

involvement of officers, the absence of a warrant, or the judge's motive by itself defeats immunity. He contends that the act itself was not judicial.

**4. The Duvall factors do not establish immunity on this record.**

Under Duvall v. County of Kitsap, 260 F.3d 1124, 1133 (9th Cir. 2001), courts consider whether the act is a normal judicial function, whether it occurred in chambers, whether the controversy centered on a case pending before the judge, and whether the events arose directly and immediately from a confrontation with the judge in her official capacity. The first factor weighs against immunity for the reasons above: judges regulate their courtrooms, but they do not in the normal course search the people in them. The second factor asks whether the events occurred in chambers; these occurred in open court, which Plaintiff acknowledges is also a judicial setting. Plaintiff also acknowledges that the third and fourth factors point the other way: the order was issued during his own trial and arose from his exchange with the judge. But those factors describe the setting, and a judicial setting cannot by itself turn a non-judicial function into a judicial one. The personnel decision in Forrester was also connected to the work of the judge's court, 484 U.S. at 229-30, and the physical removal in Gregory took place during proceedings in the judge's own courtroom, 500 F.2d at 64-65. The factors are tools for identifying the nature of the act, not substitutes for it.

Defendant also relies on SCR 229 and NRS 1.210. ECF No. 44 at 7. Those provisions let a judge regulate electronic coverage and preserve order in the courtroom. Neither authorizes compelling one person to empty his pockets, and a state rule cannot authorize what the Fourth and First Amendments forbid. They describe the general phone rule, not the targeted search.

Plaintiff recognizes that courts have frequently treated orders concerning courtroom conduct as judicial acts. He respectfully submits that the line should be drawn where a judge stops regulating the courtroom and directs a warrantless search of a particular person. That line is crossed on this record, and the motion should be denied as to Count III and as to Count

I to the extent it rests on the search. If the Court disagrees, Plaintiff preserves the issue for review.

**C. The search and the recording restriction also violated the First Amendment.**

Immunity turns on the nature of the act, so the Court need not decide the questions in this Part to deny the motion. Plaintiff presents them because the search and the recording restriction were independent constitutional violations, and to preserve both for review.

First, the search was aimed at protected newsgathering. The First Amendment protects news gathering, because "without some protection for seeking out the news, freedom of the press could be eviscerated." Branzburg v. Hayes, 408 U.S. 665, 681 (1972). The public and the press also have a First Amendment right to attend criminal trials. Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 580 (1980) (plurality opinion). No binding decision holds that a judge may order one journalist, already screened at the courthouse entrance, to empty his pockets because she expects him to gather news or record the proceedings. The First and Fourth Amendments forbid it, and Plaintiff asks the Court to so hold. The FAC and the certified record support a plausible inference that this is what happened: Plaintiff alone was ordered to empty his pockets; the only reason Judge Zimmerman stated in that exchange was that she did not "want to be part of [his] You Tube channel"; and she identified no safety concern about anything he carried. Ex. 1 at 3:19-20, 4:5-6, 5:17-18. Those remarks are evidence of motive, not conclusive proof, but at this stage they are enough. Retaliation is shown where the protected activity was a substantial or motivating factor in the defendant's conduct. See Ariz. Students' Ass'n v. Ariz. Bd. of Regents, 824 F.3d 858, 867 (9th Cir. 2016). Plaintiff recognizes that an improper motive does not by itself defeat judicial immunity, Mireles, 502 U.S. at 11; Forrester, 484 U.S. at 227, which is why his immunity argument rests on the nature of the act, not the motive. The motive goes to the merits of Counts I and III, and it confirms that the search was not a neutral application of a courtroom rule.

Second, a courtroom rule cannot override the Constitution. Judges are bound by it, U.S. Const. art. VI, cls. 2-3, and "[n]o state legislator or executive or judicial officer can war

against the Constitution without violating his undertaking to support it." Cooper v. Aaron, 358 U.S. 1, 18 (1958). Calling an order a courtroom rule does not make it constitutional. The Ninth Circuit holds that "[t]he First Amendment protects the right to photograph and record matters of public interest." Askins v. U.S. Dep't of Homeland Sec., 899 F.3d 1035, 1044 (9th Cir. 2018); see Fordyce v. City of Seattle, 55 F.3d 436, 439 (9th Cir. 1995). Plaintiff submits that this right does not end at the courtroom door when the proceeding is one the public has a constitutional right to attend. The phone rule was neutral on its face; its application to Plaintiff was not.

Judge Zimmerman did not object to recording; she signed two media requests permitting it. Ex. 1 at 3:14-16. She objected to one channel, and she said so on the record: "I don't really want to be part of your You Tube channel." Id. at 4:5-6. A judge who welcomes the press but targets one journalist because of what he publishes is engaged in viewpoint discrimination.

Defendant will call "your You Tube channel" mere speaker identity. Judge Zimmerman's own words refute that. At sentencing, moments after remarking that "[t]his helps his You Tube channel," she named the point of view she attributed to him: Plaintiff "hates every law enforcement officer in the United States." Ex. 1 at 62:24-25, 63:4-5. That is a point of view, and singling Plaintiff out for it is viewpoint discrimination. The government violates the First Amendment when it "denies access to a speaker solely to suppress the point of view he espouses." Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 806 (1985). Where the government "is plainly motivated by the nature of the message rather than the limitations of the forum or a specific risk within that forum, it is regulating a viewpoint rather than a subject matter." Sammartano v. First Judicial Dist. Ct., 303 F.3d 959, 971 (9th Cir. 2002), abrogated in part on other grounds by Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7 (2008). At the next hearing, she made clear she was following what he published. She asked his lawyer, "Have you watched the videos that have been posted since he has been incarcerated?" and then said: "So he's going to apologize to me now but that's not what he's doing publicly." Ex. 2 at 7:16-18, 8:10-12. She was judging Plaintiff by what he

said publicly. Her words at sentencing and at that hearing show what "your You Tube channel" meant to her on March 19: his message.

Even in a nonpublic forum, a restriction must be "reasonable in light of the purpose served by the forum" and "viewpoint neutral." Cornelius, 473 U.S. at 806. The Ninth Circuit has applied that rule to a courtroom. Filmmakers were denied access to an empty courtroom, and their complaint alleged that "another news outlet was permitted to access the same courtroom to report on the same subject." The court held that the courtroom was "either a nonpublic forum or a limited public forum," that "[e]ither way, speech restrictions are impermissible unless they are reasonable in light of the purposes served by the forum and viewpoint neutral," and that the complaint permitted "the reasonable inference that the defendants denied the plaintiffs' request to access the courtroom because of the plaintiffs' viewpoint." Dutton v. Wesley, 583 F. App'x 701, 702 (9th Cir. 2014) (unpublished). The facts that carried that inference were that "the plaintiffs had a history of being critical of the defendants, and that the defendants were aware of this criticism." Id. If an empty courtroom must be administered without viewpoint discrimination, an open criminal trial demands at least as much. Judge Zimmerman signed two media requests to record Plaintiff's trial and singled out the one journalist whose channel she did not want to be part of. Even a facially reasonable justification cannot save a restriction "that is in fact based on the desire to suppress a particular point of view." Sammartano, 303 F.3d at 971 (quoting Cornelius, 473 U.S. at 812). Sammartano treated a courthouse complex as a nonpublic forum, id. at 966, but stressed that "permissible regulation within the courtrooms . . . is not at issue in this case" and that its holding "is directed only at the policies and Rules that generally regulate behavior in the non-courtroom areas of the Complex." Id. at 975. No published decision of the Supreme Court or the Ninth Circuit holds that an open criminal trial is a nonpublic forum. Plaintiff contends that a restriction at an open criminal trial must be "necessitated by a compelling governmental interest, and . . . narrowly tailored to serve that interest." Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 606-07 (1982). Globe concerned closure, not recording, but its protection should reach a restriction aimed at one journalist's message.

Judge Zimmerman offered neither for singling Plaintiff out. The only reason she stated in that exchange was "I don't really want to be part of your You Tube channel." Ex. 1 at 4:5-6. A judge's wish to stay off a journalist's channel is not a compelling interest, and an order aimed at one journalist because of his message is not a neutral time, place, or manner limit. At the very least, Plaintiff is owed the nonpublic-forum test, and her order fails that too.

Plaintiff acknowledges the authority against him on recording generally. The Supreme Court has said that "there is no constitutional right to have [live witness] testimony recorded and broadcast," Chandler v. Florida, 449 U.S. 560, 569 (1981) (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 610 (1978)); see Estes v. Texas, 381 U.S. 532, 539-40 (1965). The Ninth Circuit has said that whether trials may be broadcast "will be determined ultimately by the Judiciary as an institution or by mandate from Congress." Perry v. Brown, 667 F.3d 1078, 1080 (9th Cir. 2012). Those decisions came before nearly every member of the public carried a recording device, and none involved a judge who approved the press while singling out one journalist for his message. Plaintiff asks the Court to hold that the recording restriction, as applied to him, violated the First Amendment because its enforcement was neither reasonable nor viewpoint neutral. If the Court concludes that controlling precedent forecloses that holding, Plaintiff expressly preserves the issue for review by the Ninth Circuit and the Supreme Court.

**D. The sentencing and bias allegations.**

Plaintiff acknowledges that under Stump, Mireles, and Ashelman v. Pope, 793 F.2d 1072 (9th Cir. 1986) (en banc), the imposition of a sentence is ordinarily treated as a judicial act, and that in this Circuit allegations of malice or of an agreement with the prosecution do not by themselves defeat immunity. He states his position to preserve it for further review: a sentence that rejects the prosecution's own request for a fine and a suspended sentence, that is explained on the record by reference to the defendant's "You Tube channel," Ex. 1 at 62:20-63:5, that is imposed on a defendant who, as alleged, was the only one of fifteen NRS 197.190 defendants on her docket from 2018 to 2024 to be jailed, ECF No. 7 ¶ 36, and that rests on conduct later held to be protected by the First Amendment, Ex. 3 at 5:5-7, should not

be shielded by absolute immunity. Defendant responds that the comparators were never sentenced and that the State, not the judge, dismissed their cases. ECF No. 44 at 9. That misses the point. Here, too, the State asked for no jail: an impulse control class, a $500 fine or community service, and a suspended sentence. Ex. 1 at 61:24-62:6. Judge Zimmerman alone chose 180 days in custody, beginning immediately. Id. at 63:15-23.

Judge Zimmerman stated at the April 1, 2024 hearing that she did not sentence Plaintiff for filming or for his behavior in court. Ex. 2 at 8:25-9:13. That explanation, given after Plaintiff appealed, does not erase what she said when she imposed the sentence: "[t]his helps his You Tube channel." Ex. 1 at 62:24-25. These facts are also relevant to the retaliatory motive underlying Count I and to the claims against the remaining defendants, which this motion does not address.

Judge Zimmerman also said at that hearing that her sentence rested on "the safety issues that he created with his behavior." Ex. 2 at 9:2-3. The order reversing the conviction states otherwise. The reversing court found that none of the criteria for obstruction were met; that Plaintiff stopped speaking to the driver when the officer told him to; that he backed up when ordered; that the officer was not hindered in issuing the driver a citation; and that Plaintiff's conduct was protected by the First Amendment. Ex. 3 at 4:14-15, 4:20-21, 5:1-2, 5:5-7, 5:14-15.

This Section addresses Counts IV and VI, and Count I to the extent it rests on the sentence or other rulings in the criminal case. ECF No. 7 ¶¶ 64, 69-70. Plaintiff does not consent to dismissal of those claims; he opposes the motion as to them to preserve the issue for review. If the Court dismisses them, Plaintiff asks that the dismissal be limited to damages, that his request for declaratory relief be addressed under Section V.E.1, and that the order not foreclose his use of these facts as evidence of retaliatory motive for the March 19 search.

**E. If the motion is granted in any part, the dismissal should be limited.**

**1. Any jurisdictional dismissal of declaratory relief should be without prejudice.**

Plaintiff does not pursue injunctive relief against Judge Zimmerman. Defendant argues that Plaintiff lacks standing to seek prospective relief and that the requested declaration concerns past conduct. ECF No. 44 at 10-11. Those arguments go to standing and to whether declaratory relief is justiciable, not the merits. A dismissal for lack of standing is a dismissal for lack of jurisdiction and should be without prejudice. Fleck & Assocs., Inc. v. City of Phoenix, 471 F.3d 1100, 1106-07 (9th Cir. 2006).

**2. Fees.**

Plaintiff is not seeking an award of attorney's fees under 42 U.S.C. § 1988 for his own work as a pro se litigant. See Kay v. Ehrler, 499 U.S. 432, 435-38 (1991). He reserves the right to seek fees should counsel appear on his behalf, to the extent the statute permits.

**3. The motion does not reach the other defendants.**

Judge Zimmerman moves only on her own behalf. ECF No. 44 at 1. Count III is pleaded against both Judge Zimmerman and the John Doe Bailiff who carried out the search, ECF No. 7 ¶ 60, and Count V is pleaded against John Does 1-10, who excluded members of the public from Plaintiff's proceedings, id. ¶¶ 41-43, 67-68. Plaintiff does not concede dismissal of Count V, which arises from the exclusion of members of the public from Plaintiff's post-trial proceedings and which this motion does not address. Any order on this motion should be limited to the claims against Judge Zimmerman.

**4. Leave to amend.**

Leave to amend should be freely given when justice so requires, Fed. R. Civ. P. 15(a)(2), and a pro se litigant must be given notice of a complaint's deficiencies and an opportunity to amend unless it is absolutely clear that the deficiencies cannot be cured. Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012); Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc). Amendment would not be futile. The FAC does not plead the specific facts shown in the certified transcripts. If permitted, Plaintiff would plead them, as set out in Section III above: that the general phone rule and the orders compelling him alone

to empty his pockets were separate acts; that the second order came after his apology to the Court; that the judge tied the search and the sentence to his YouTube channel on the record; and the facts of the exclusion of members of the public from Plaintiff's post-trial proceedings. In ECF No. 38, the Court permitted Plaintiff to file a second amended complaint asserting Monell claims by October 21, 2026. ECF No. 38 at 12:3-5. Plaintiff will move separately, under Federal Rule of Civil Procedure 6(b)(1)(B) and Local Rule 15-1, for leave to file a second amended complaint after that deadline.

**VI. CONCLUSION**

For these reasons, Plaintiff respectfully requests that the Court:

1. Consider Exhibits 1 through 3, of which Plaintiff has separately requested judicial notice;
2. Deny Defendant Zimmerman's Motion to Dismiss as to Count III, and as to Count I to the extent it rests on the March 19, 2024 orders compelling Plaintiff to empty his pockets;
3. Deny the motion as to Counts IV and VI, and as to Count I to the extent it rests on the sentence, for the reasons stated in Section V.D, which Plaintiff presses to preserve them for review;
4. Hold that the FAC and the certified record plausibly allege that the March 19, 2024 order compelling Plaintiff alone to empty his pockets violated the Fourth and First Amendments, and that the recording restriction, as applied to Plaintiff, was not viewpoint neutral, see Part V.C;
5. If the Court grants the motion in any part, dismiss the request for declaratory relief against Judge Zimmerman without prejudice;
6. Limit any order on this motion to the claims against Judge Zimmerman, without affecting the claims against the John Doe Bailiff or John Does 1-10;

7. Grant Plaintiff leave to amend as to any claim dismissed on grounds that further factual allegations could cure; and

8. Note Plaintiff's preservation of the issues stated in Sections V.B, V.C, and V.D.

DATED: November 16, 2026

Respectfully submitted,

Jose M. DeCastro
5350 Wilshire Blvd, PO Box 36143
Los Angeles, CA 90036
(310) 963-2445
chille@situationcreator.com
Plaintiff, Pro Se

**CERTIFICATE OF SERVICE**

I certify that on November 16, 2026, I served a true and correct copy of the foregoing Plaintiff's Opposition to Defendant Ann E. Zimmerman's Motion to Dismiss (ECF No. 44), with Exhibits 1 through 3, by depositing it in the United States mail at Los Angeles, California, first-class postage prepaid, addressed as follows, and I sent a courtesy copy by email to the addresses shown:

Olivia C. Denue (Olivia.Denue@ClarkCountyDANV.gov)
Nicole R. Malich (Nicole.Malich@ClarkCountyDANV.gov)
Attorneys for Defendant Ann E. Zimmerman

Scott Davis (Scott.Davis@ClarkCountyDANV.gov)
Attorney for Defendant Clark County

Clark County District Attorney, Civil Division
500 South Grand Central Pkwy.
Las Vegas, NV 89155-2215

______________________________
Jose M. DeCastro
Plaintiff, Pro Se